THE GREIF COOPERAGE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44789. Promulgated October 23, 1934.

*Henry J. Richardson*, Esq., for the petitioner.

*Philip M. Clark*, Esq., and *Stanley B. Pierson*, Esq., for the respondent.

OPINION.

SMITH: This proceeding involves a deficiency in petitioner's income tax for 1925 in the amount of $21,020.29. The petitioner alleges that the respondent erred in disallowing deductions claimed in its consolidated return for 1925 on account of losses sustained by it in that year upon dissolution of two of its subsidiary companies. The essential facts have been stipulated substantially as follows:

For the calendar year 1925 the petitioner (a parent and non-operating company) filed a consolidated return for itself and 23 other affiliated operating companies, among which number were the Sandpeeco Veneer Co. and the Tuscaloosa Cooperage Co., wholly owned subsidiaries of the petitioner. Petitioner, then, or thereafter, agreed to pay income tax legally due and payable by it or any of the affiliated companies for 1925.

The consolidated return of petitioner and affiliated companies for the year 1925 showed net income of $419,875.34 and income tax due thereon of $50,331.22. The respondent has increased the net income of the affiliated group included in the consolidated return to $581,569.88, and the tax thereon to $71,351.22. This increase was brought about by the respondent's refusal to allow losses in the sum of $100,000 on stock of the Sandpeeco Veneer Co. and $77,560.03 on

stock of the Tuscaloosa Cooperage Co., claimed to have been sustained upon the liquidation of those companies in 1925.

During the period of affiliation for which consolidated tax returns were filed by the petitioner for itself, the Sandpeeco Veneer Co., the Tuscaloosa Cooperage Co., and other companies of the affiliated group, the income of the affiliated group outside of Sandpeeco Veneer Co. was lessened by net losses of the latter company in the aggregate amount of $104,413.19 and enlarged by the net income of that company in the aggregate amount of $16,070.24 as follows:

| Year | Net loss | Taxable income | Year | Net loss | Taxable income |
|------|----------|----------------|------|----------|----------------|
| 1920 | | $16,070.24 | 1924 | $26,494.40 | |
| 1921 | $16,654.95 | | 1925 | 9,317.62 | |
| 1922 | 22,114.17 | | | | |
| 1923 | 29,832.82 | | Total | 104,413.96 | $16,070.24 |

During the period of affiliation for which consolidated returns were filed by the petitioner for itself and other companies of the affiliated group the net income of the affiliated group outside of the Tuscaloosa Cooperage Co. was lessened by net losses of the latter company in the aggregate amount of $111,649.68 and enlarged by net income of that company in the aggregate amount of $26,223.98 as follows:

| Year | Net loss | Taxable income | Year | Net loss | Taxable income |
|------|----------|----------------|------|----------|----------------|
| 1920 | $2,274.73 | | 1924 | $11,412.98 | |
| 1921 | 54,682.54 | | 1925 | 8,112.24 | |
| 1922 | 35,167.19 | | | | |
| 1923 | | $26,223.98 | Total | 111,649.68 | $26,223.98 |

During the same period petitioner's individual net income or loss as distinguished from the income or losses (exclusive of losses of $177,560.03 arising from the liquidation of Sandpeeco Veneer Co. and Tuscaloosa Cooperage Co. in 1925) of the affiliated group was as follows:

| Year | Net loss | Taxable income | Year | Net loss | Taxable income |
|------|----------|----------------|------|----------|----------------|
| 1920 | | | 1924 | $3,363.33 | |
| 1921 | $37,712.50 | | 1925 | 33,782.50 | |
| 1922 | | $2,179.47 | | | |
| 1923 | | 2,356.64 | Total | 74,858.33 | $4,536.11 |

During the same period the consolidated current net income and losses of the petitioner and affiliated companies (exclusive of losses

of $177,560.03 arising from the liquidation of the Sandpeeco Veneer Co. and Tuscaloosa Cooperage Co. in 1925) were as follows:

| Year | Income | Loss | Year | Income | Loss |
|---|---|---|---|---|---|
| 1920 | $129,973.43 | | 1923 | $603,958.25 | |
| 1921 | | $43,952.50 | 1924 | 236,699.47 | |
| 1922 | 29,837.46 | | 1925 | 581,569.88 | |

Both the Sandpeeco Veneer Co. and Tuscaloosa Cooperage Co. were fully liquidated and dissolved during the calendar year 1925.

The petitioner acquired the stock of the Sandpeeco Veneer Co. at a cost of $100,000, and received nothing in liquidation thereof, the cost of the investment being duly charged off by petitioner as a loss during the year 1925.

The petitioner acquired the stock of the Tuscaloosa Cooperage Co. at a cost of $113,100 and received in liquidation thereof $35,539.97, leaving a balance of $77,560.33 which was duly charged off as a loss in the year 1925.

The petitioner, pursuant to agreement under section 240 of the Revenue Act of 1926, has become obligated for the payment of any legal income tax that may ultimately be determined to be due and payable by it or any of the affiliated companies as listed in respondent's 60-day letter dated April 12, 1929, upon which the petition is based.

The questions to be determined are whether the petitioner sustained a deductible loss in 1925 upon the liquidation and dissolution of the Sandpeeco Veneer Co. and the Tuscaloosa Cooperage Co., and, if so, whether, in determining the amount of such loss, allowance should be made for the operating losses sustained by the subsidiary companies in prior years which were deducted in the consolidated returns for such prior years.

The respondent has determined that the liquidation and dissolution of these subsidiary companies were intercompany transactions upon which no deduction may be taken for gains or losses. This question was carefully reviewed by the Board in *W. M. Ritter Lumber Co.*, 30 B. T. A. 231, wherein we stated, after discussing *Remington Rand, Inc.* v. *Commissioner*, 33 Fed. (2d) 77; certiorari denied, 280 U. S. 591; *Burnet* v. *Riggs National Bank*, 57 Fed. (2d) 980; *Aluminum Goods Mfg. Co.* v. *Commissioner*, 56 Fed. (2d) 568; *United Publishers' Corporation* v. *Anderson*, 42 Fed. (2d) 781; *Burnet* v. *Aluminum Goods Mfg. Co.*, 287 U. S. 544; *Hernandez* v. *Ilfeld Co.*, 66 Fed. (2d) 236, and others, that:

Our conclusion is that the total loss sustained upon the complete liquidation of an affiliate, including the investment in its stock and advances made to it

and properly deductible from income upon the termination of affiliation by dissolution, must be reduced by the total losses sustained by such affiliate in prior years for which consolidated returns were filed and on which such losses were taken as a deduction from consolidated income in those years.

Since our opinion in that case was promulgated, the Supreme Court has decided *Ilfeld Co.* v. *Hernandez*, 292 U. S. 62, affirming 66 Fed. (2d) 236. The court there held that a loss sustained by a parent corporation in 1929 upon the liquidation and dissolution of its two subsidiary companies was not deductible, since they were intercompany transactions and, further, that since the operating losses of the subsidiaries, deducted in the consolidated returns from 1917 to 1929, exceeded the parent company's investment in the subsidiary companies, to allow the deduction of the loss on liquidation would result in a double deduction, which is contrary to the intendment of the statute. The taxable year there under consideration was 1929 and the provisions of the Revenue Act of 1928 applied, whereas in the instant case the liquidation and dissolution of the subsidiary companies occurred during the year 1925, and the transactions are controlled by the provisions of the Revenue Act of 1926. *Walker Products Corporation*, 30 B. T. A. 636. The Supreme Court said in the *Ilfeld Co.* case:

3. The allowance claimed would permit petitioner twice to use the subsidiaries' losses for the reduction of its taxable income. By means of the consolidated returns in earlier years it was enabled to deduct them. And now it claims for 1929 deductions for diminution of assets resulting from the same losses. If allowed, this would be the practical equivalent of double deduction. In the absence of a provision of the Act definitely requiring it, a purpose so opposed to precedent and equality of treatment of taxpayers will not be attributed to lawmakers. Cf. *Burnet* v. *Aluminum Goods Co.*, 287 U. S. 544, 551. *United States* v. *Ludey*, 274 U. S. 295, 301. There is nothing in the Act that purports to authorize double deduction of losses or in the regulations to suggest that the commissioner construed any of its provisions to empower him to prescribe a regulation that would permit consolidated returns to be made on the basis now claimed by petitioner.

\* \* \* \* \* \* \*

The weight of authority is against petitioner's contention. *Burnet* v. *Riggs Nat. Bank*, 57 F. (2d) 980. *Commissioner* v. *Apartment Corp.*, 67 F. (2d) 3. *Summerfield Co.* v. *Commissioner*, 29 B. T. A. 77. *National Casket Co.* v. *Commissioner*, 29 B. T. A. 139. No decision other than that of the district court in *United Publishers' Corporation* v. *Anderson*, *supra*, gives any support to its claim. Cf. *Burnet* v. *Imperial Elevator Co.*, 66 F. (2d) 643. *McLaughlin* v. *Pacific Lumber Co.*, 66 F. (2d) 895.

The petitioner contends that the above observations of the Supreme Court have no application to it, for the reason that the petitioner has never had its own taxable income reduced by the operating losses of the two subsidiaries in question. It submits that it had no taxable income for the years 1920 to 1925, inclusive, except for the years

1922 and 1923; that the aggregate amount of such net incomes was only $4,536.11; and that such net incomes were offset by its net loss for 1921 in the amount of $37,712.50. It further contends that even though the net losses of the two liquidated subsidiaries were availed of in some years by the other affiliates and even though an indirect benefit accrued to it from such source, it never directly had the benefit of reducing its own taxable income for any year by the net losses of the two subsidiaries liquidated.

If the net losses of the Sandpeeco Veneer Co. and of the Tuscaloosa Cooperage Co. had been applied directly against the net incomes of the petitioner for prior years for which it filed consolidated returns there could be no question but that the deductible loss should be reduced by the operating losses of the two companies above named. *Burnet* v. *Riggs National Bank, supra; Commissioner* v. *Apartment Corporation*, 67 Fed. (2d) 3; *Summerfield Co.*, 29 B. T. A. 77; *National Casket Co.*, 29 B. T. A. 139; *W. M. Ritter Lumber Co., supra; Ilfeld Co.* v. *Hernandez, supra; Walker Products Corporation, supra.*

The question here is whether a different rule should obtain where the operating losses of the liquidated subsidiaries have been applied not against the net incomes of the petitioner corporation, but against the net incomes of other subsidiaries. The question in any event is the actual loss which was sustained by the petitioner from the liquidation of the two subsidiaries. If the liquidating losses should be reduced by the operating losses availed of by the parent corporation in reduction of its own net incomes in prior years, we think that they should be reduced by the operating losses which have been availed of in the reduction of the net incomes of other subsidiaries in prior years. In either event the benefit of offsetting net incomes by the operating losses redounded to the parent corporation—in the one case directly and in the other indirectly. At the hearing of this proceeding counsel for the respondent stated that the petitioner owned all of the stock of all of the subsidiaries the same as it owned all of the stock of Sandpeeco Veneer Co. and of the Tuscaloosa Cooperage Co. The stipulation of facts does not make this plain, but the deficiency notice, upon the basis of which the petition was filed, indicates the truth of the statement. The stipulation does show that the petitioner was a nonoperating holding corporation of the shares of stock of all the subsidiaries, and that showing is sufficient for present purposes.

In ruling as above, the Board does not overlook the fact that an affiliated corporation joining with others in filing a consolidated return does not lose its character as an individual taxpayer; that the affiliated group simply constitutes a tax-computing unit. *Sweets Co. of America* v. *Commissioner*, 40 Fed. (2d) 436; *Swift & Co.* v. *United States*, 38 Fed. (2d) 365; *Commissioner* v. *Ben Ginsburg Co.*,

54 Fed. (2d) 238. We are of opinion, however, that in the computing of the deductible loss sustained by a parent corporation from the liquidation of a wholly owned subsidiary, adjustment must in every case be made for operating losses of such subsidiary which have been availed of by members of the affiliated group in reducing their taxable incomes during the period of affiliation for which consolidated returns have been filed. Cf. *W. M. Ritter Lumber Co., supra; Walker Products Corporation, supra*. If this were not so the double deduction of losses condemned by the Supreme Court in *Ilfeld Co. v. Hernandez, supra*, would result. The principles of the computation of adjustment invoked by the Board in *Walker Products Corporation, supra*, apply here.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*