364

*. UNDERWRITERS SERVICE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55706.   Filed May 13, 1957.

*George E. Link, Esq.*, for the petitioner.
*Aaron S. Resnik, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge:* The Commissioner determined deficiencies in income and excess profits tax as follows:

| | |
|---|---|
| 1950 | $1, 043. 52 |
| 1951 | 9, 791. 02 |
| 1952 | 7, 089. 25 |

The sole issue is the proper method of computing the petitioner's excess profits net income for its base period year 1946 in order to arrive at its excess profits credit for the taxable years under the income method.

All of the facts are stipulated and are hereby found as stipulated.

The petitioner, a California corporation, filed its income and excess profits tax returns for 1950, 1951, and 1952 with the collector or district director of internal revenue at San Francisco, California.

The petitioner became a wholly owned subsidiary of the Henry J. Kaiser Company (hereinafter referred to as Kaiser) on September 20, 1946, and continued as such until December 18, 1946, when Kaiser ceased to own 95 per cent of the voting stock of the petitioner.

Kaiser was the common parent of an affiliated group of corporations which filed a consolidated return for the taxable year of such common parent which ended June 30, 1947. The petitioner's net income of $79,012.90 for the affiliated period September 21, 1946, through December 18, 1946, was included in that consolidated return. The petitioner's separate net income for that period would have been $78,512.90 by reason of a $500 charitable deduction which was not allowable on the consolidated return.

The petitioner, by letter to the Commissioner dated April 10, 1947, asked for a ruling as to the proper method of reporting its income for

the portions of 1946 during which it was not a member of the Kaiser affiliated group. The petitioner stated that it desired to maintain its calendar year basis for reporting income and was concerned as to whether it would be required to adopt the fiscal year period of Kaiser.

The Commissioner replied by letter dated April 18, 1947, that the petitioner would not be required to change its accounting period to conform to that of Kaiser unless it was filing a consolidated return with Kaiser for the next year. The Commissioner also advised that the petitioner would be required to file a separate return for each period during 1946 when it was not a member of the affiliated group. The petitioner filed separate returns for the periods January 1, 1946, to September 20, 1946, and December 19, 1946, to December 31, 1946.

The petitioner's excess profits net income for the periods indicated was as follows:

| | |
|---|---|
| Jan. 1 to Sept. 20, 1946 | $68,174.60 |
| Sept. 21 to Dec. 18, 1946 [1] | 78,512.90 |
| Dec. 19 to Dec. 31, 1946 | (7,131.61) |

[1] Included in Kaiser's consolidated return.

The petitioner filed and was allowed a claim for refund of a portion of the income taxes paid by it for the January 1 to September 20, 1946, period, based upon a carryback of the December 19 to December 31, 1946, operating loss of $7,131.61.

The books of the petitioner were not closed to reflect income for any of those fractional periods. They were closed only once for the entire year 1946, showing a profit of $139,791.09 which was credited to surplus.

The $139,791.09, minus a statutory loss adjustment of $3.33, or $139,787.76, was determined by the Commissioner in his notice of deficiency to be the petitioner's excess profits net income for the 12 months of 1946.

The petitioner's excess profits credit for each of the taxable years is to be computed under section 435, which provides that it shall be a percentage of the average base period net income. The base period provided in this case began on January 1, 1946, and ended on December 31, 1949. Section 435 (d) provides how the average base period net income shall be determined, and its first sentence is that it shall be determined by computing the excess profits net income for each month of the base period. The petitioner attacks the determination of the Commissioner only as to his determination for the 12 months of 1946. The Commissioner has correctly determined the excess profits net income for those 12 months.

The petitioner's contention is that the second sentence of section 435 (d) (1) applies in this case:

The excess profits net income for any month during any part of which the taxpayer was in existence shall be the excess profits net income for the taxable

year in which such month falls divided by the number of full calendar months in such year, but in no case shall the excess profits net income for any month be less than zero. * * *

That provision has no application to this case. The petitioner tries to make much of the reference to "taxable year" in the quoted sentence from section 435 (d) (1). However, his reliance is misplaced as clearly appears when that sentence is read along with all of the other provisions of section 435. The purpose of that sentence is to give some slight relief in a situation where the taxpayer was in existence for only a part of the beginning month of one of its taxable years, necessarily a period of less than 12 full months, making up a part of the 48-month base period. This taxpayer had no such situation but was in existence both before January 1, 1946, and after December 31, 1949; before and after each separate short tax period, "taxable year," in the calendar year 1946; and during all of every one of the 12 months in the calendar year 1946. There is no occasion to compute its excess profits income for any month in 1946 during a part of which it was in existence and during a part of which it was not in existence, since there was no such month. Cf. *Helvering* v. *Morgan's, Inc.*, 293 U. S. 121. The fact that the petitioner filed two separate returns for portions of 1946 and that its income for the other portion of that year was reported in the consolidated return had no effect whatsoever upon the petitioner's excess profits net income for any of the 12 months in the calendar year 1946.

The petitioner, by a computation in which it purports to apply the quoted second sentence of section 435 (d) (1), divides its excess profits net income for the period from January 1, 1946, through September 20, 1946, by 8 (months) and then multiplies the quotient by 9 (months); divides its excess profits net income for the period from September 21, 1946, through December 18, 1946, by 2 (months), and then multiplies by 4 (months); subtracts its loss for the period from December 19, 1946, through December 31, 1946; and arrives at $226,590.62 as the total excess profits net income for 1946, whereas its actual excess profits net income for the 12 months of 1946 was $139,787.76. It has by this method expanded the 12 months of 1946 into 14 months and has computed excess profits net income for "taxable years" rather than for months. There is no authority in the law for any such unreasonable computation and no merit to the petitioner's contention in this case. Cf. *Holy Trinity Church* v. *United States*, 143 U. S. 457; *United States* v. *Amer. Trucking Ass'ns.*, 310 U. S. 534.

The conclusion that the Commissioner's determination in this case is correct requires rejection of his alternative computation upon which he bases a claim for increased deficiencies.

*Decision will be entered in accordance with the Commissioner's determination.*